8   131
72   616.

## Richardson, Appellant, *v.* Warwick *et al.*

The act of 1840, giving the mechanic a lien for his labor, and the proceeding to en-
force the same in the circuit court by petition, does not conflict with the constitution.

Where the petition filed under the act of 1840, to enforce a mechanic's lien, alleged
that the claim was one entitled to the privileges conferred by the act, and on the
plea of non assumpsit there was a verdict in general terms, "we of the jury find for
the plaintiffs," it was held, that the presumption must be that the allegations of the
petition were established by proof.

The mechanic may elect to abandon his special lien after judgment, and have an ex-
ecution as in the case of an ordinary judgment.

APPEAL from the circuit court of the county of Wilkinson.

Warwick & Ray filed their petition against Richardson, under
the act of 1840, to enforce a mechanic's lien to a certain tract of
land, and a gin house built thereon by them.   The petitioners al-
leged that the house was built by them in pursuance of the terms
of a contract made with Richardson, which was set out in the
petition.   Petition averred that the labor bestowed, and materials
furnished, amounted to twelve hundred and eighty-two dollars.
The account filed with the petition, containing a statement of the
items, contained charges for putting additions to the house, hang-
ing grindstone, and other items, which it was contended did not
fall within the lien created by the act of 1840; but it did not ap-
pear that they were objected to on the trial.

The defendant demurred to the petition, assigning, among other
causes, that the court had no jurisdiction; which demurrer was
overruled.   The defendant then filed an answer, denying the
statements of the petition; to which the plaintiffs demurred, which
was sustained.   The defendant then filed his pleas: 1. General
issue.   2. A special plea, in which it was averred that the tract
of land, on which said gin house was erected, is subject to a judg-
ment in favor of the West Feliciana Rail Road Company, reco-

vered April 23, 1839. The petitioners demurred to the second plea, which was sustained. The cause was then put to the jury, who returned the following verdict: "We the jury find for the plaintiffs, and assess their damages at one thousand and twenty-three dollars, thirty-one cents." Upon this verdict judgment was entered, as in an action for damages.

C. P. Smith for appellant.

We except, first, to the judgment of the court on the demurrer of defendant to the petition.

The material part of the contract, stated in the petition, is to this effect. The petitioners agreed with defendant "to erect and build for him a gin house on a certain tract of land of defendant's; to assist in getting out materials for the gin house, and also to make machinery for the same."

By reference to the account filed with the petition, it will be perceived that it contains the following items or charges, to wit: an item "for adding two additions to said house," an item for "superintending sawyers," and another for "hanging a grindstone." These three charges constitute a large part of the petitioners' demand. The object of the proceeding was to establish petitioners' demand, and to enforce the lien arising from the performance of the contract against the land and house of defendant. We insist that neither of these items were embraced by the terms of the contract; and that the second and third are not embraced by the terms of statute, by which the right of lien is asserted. The service performed by the petitioners, in superintending sawyers, could not, if it were done pursuant to any stipulation of the contract, entitle them to a lien on the land, building or machinery; especially in the absence of an averment, showing that the sawyers were employed in preparing material for the house or machinery. And even then, the products of the labor of the sawyers could not be considered materials furnished by the petitioners. If the lien could attach to any thing, it would be to the sawyers. If petitioners had furnished the grindstone, instead of "hanging" it, by the contract they may have acquired a lien on the grindstone; but could not by any principle have acquired a right of lien in the house or land. We insist, therefore, that the petition was defect-

ive, and, as of consequence, the court erred in overruling the defendant's demurrer.

In the second place, we insist that the court erred in sustaining the demurrer of plaintiffs to the answer of defendant, and submitting the cause to the jury on the issue of non assumpsit.

If the rights of defendants in error, under the contract and law, were of a purely legal character, over which a court of equity could exercise no jurisdiction, the method of redress prescribed by the third section of the above recited act (M. Laws, 1840, p. 58,) it is believed is unconstitutional and void. It is deemed that it is clearly inferable, that it was the intention of the legislature in these proceedings by petition to exclude the right of trial by jury. It is not insisted that the act expressly directs that the trial by jury shall be dispensed with; but it directs a course of procedure wholly incompatible with the established forms of procedure in a court of common law. The party claiming a similar right may elect to file a bill, or to proceed by petition; and in either case, it is believed, has a right to compel a discovery by the opposite party, and to ground a decree upon the admissions of the answer to his bill or petition. This is an essential feature in chancery proceedings; and it must be manifest, that it would be difficult, if not impracticable, to frame any plea, appropriate in any of the forms of action known in courts of common law, which would meet the allegations of the petition or bill, and not be exceptionable, if tested by the rules of special pleading. But the law has evidently vested the circuit judge with the powers of a chancellor over the subject matter of these statutory mortgages or liens. The last clause of the third section of this act requires and empowers the circuit courts to "give judgment according to the justice of the case." It is the peculiar province of the jury to weigh the evidence and ascertain the facts; that of the court to pronounce the law arising upon the facts, or established by the pleadings in the cause. But if the court is vested with power to give judgment according to the justice of the case, it would appear to follow that the peculiar functions of the jury have been superceded by the terms of the act, and the court, or judge, clothed with authority to decide both law and fact. In other words, the statute has had the effect, if valid, to erect the circuit courts into equity tribunals, where this

particular class of liens may be enforced. If we are correct in the assumption, that it was the intention of the legislature in such cases to exclude the trial by jury, the law must be enforced, as it was intended to operate by the legislative authority, or be abandoned as inoperative. For it is deemed clear, that the court cannot add a provision which it was the intention of the legislature to exclude. 1 Call, Rep. 411; Peck's Rep. 418. The result, therefore, is inevitable: that if the rights contested in this suit are purely legal, the exclusion of the trial by jury would render this provision of the law void, and, of consequence, all the proceedings had under it are void.

But, on the other hand, if the subject matter of the petition be of such a character that the circuit court, sitting as a court of equity, could take cognizance of it, then it requires no argument to show that the court below erred in sustaining the demurrer to the answer, and submitting the cause to the jury on the plea of non assumpsit.

That the circuit courts have jurisdiction, sitting as courts of equity, over the subject of these liens, we think is susceptible of proof. We do not contend that liens, arising from the operation of the mechanics' law, are technical mortgages; yet, in many practical points of view, they are the same. A lien is "a right to have a debt satisfied out of a particular thing, in preference to all other adverse interests subsequently acquired." 12 Wheaton's Rep. 179.

It is true, the party holding a lien has no right of property in the thing to which it attaches, but only a preference to have his demand satisfied out of the subject to which it applies; whereas the mortgagee has a vested right of property at law in the mortgaged premises; but in equity that right of property is but a security or pledge for his debt or demand. Com. Dig. Chan. 4; Story's Eq. 232–33. In effect, the interest of the mortgagee and the person possessing the lien, have an interest of the same character. The interest which a mechanic acquires under this law, by the performance of a contract to construct a building, to the building itself and the land on which it is placed, is in fact a statutory mortgage. The enforcement of the statutory mortgagee's right of satisfaction out of the property covered by his lien, is a

Richardson, Appellant, *v.* Warwick *et al.*

matter within the original jurisdiction of a court of equity, and, viewed in this light, certainly falls within the concurrent equity jurisdiction of the circuit courts.     And when the amount in controversy does exceed five hundred dollars, no doubt can be entertained, as liens, whether they arise from contract, custom, or the operation of law, constitute one of the original sources of chancery jurisdiction; and courts of equity in all cases, where the remedy supplied by courts of law is inadequate, will assume it.     Story's Eq. ——.     We do not insist, that in no case of lien, under this statute, would the remedy supplied at law be adequate; but we insist that few cases can be imagined, where, if the rules of special pleading be adopted, in proceeding by petition under this law, difficulty and danger would not ensue; and that no case can be put, where the remedy afforded in equity would not be more safe and equally efficient.

These considerations are important, if the intentions of the legislature from the language used in the statute are at all doubtful; and we submit whether the injunction of the law, that the "court shall give judgment according to the justice of the case," would not be better observed by holding that the legislature intended to commit the enforcement of these liens to the equity, and not to the legal jurisdiction of the circuit court, upon the ground that they are in fact mortgages.

We insist that the verdict of the jury is irregular and void, and that of consequence the judgment thereon is erroneous.

The scope and object of defendants' petition were to obtain satisfaction of their demand by subjecting specific property to its payment.     The material allegations of their petition are, that the parties to this suit entered into a contract for the erection of a gin house, for the supply of materials for the building, and for machinery; that a debt was due to the petitioners for labor done, &c. in pursuance of that contract; and that they were entitled to have satisfaction out of the building erected and the land on which it stood.     All of these matters were put at issue by the pleadings; but the verdict has established but one of the numerous questions submitted to them, that is, the value of the work or labor performed by the petitioners.     One of the principal allegations of the petition has not been passed upon by the jury, that is, the

right of lien. If the petitioners failed to establish by proof the special contract, or the existence of their asserted lien, they are not entitled to any judgment either against the specific property alleged to be covered by their lien, or against the person of the defendant. We assert, therefore, that the finding of the jury was insufficient, and that no judgment should have been given by the court. Chewning *v.* Cox, 1 Howard's R. 130; Longacre *v.* The State, 2 *Ib.* 637.

These objections apply with greater force to the judgment of the court below. What is the proper judgment in such a proceeding? It should have responded to the allegations of the petition. It should have been "the conclusion which the law would have deduced from the premises presented by the petition and plea." If the finding of the jury did not establish the averments of the petition the court could not pronounce the sentence of the law. Assuming by way of illustration that the verdict does respond to the petition, an essential part of the judgment should have been, that the debt found to be due should have been satisfied out of the specific property to which their lien attached.

It is obvious that it was not the intention of the legislature to give the mechanic or other person furnishing building materials a lien on the whole of the property of the other party; but only to that to which the labor of the mechanic or the materials furnished had given additional value. The judgment of the court, therefore, should have corresponded to the decree of the chancellor, for closing a mortgage and ordering a sale of the mortgaged property. But in this case the judgment of the court is against the defendant in person, subjecting the whole of his property to the payment of the debt. Upon this judgment the special execution directed in the 4th section of this act to be issued, could not emanate. And if the ordinary execution should be issued, the defendant would have a right to bond it, and a forfeiture of the bond would defeat the very object of the law, as the lien would thereby be raised. Results which of themselves show that the judgment is erroneous.

WALKER, for appellees.

Richardson, the plaintiff in error, has assigned three errors.

I. The first error assigned is, that the court below erred in overruling the demurrer filed by Richardson, the defendant below, to the petition of Warwick and Reecy, the plaintiffs below.   This assignment brings in review before this court all the causes of demurrer assigned in said demurrer.

1. The first cause of demurrer assigned is, that the petition does not state that the plaintiffs below claim a lien on the work done for Richardson.   To this we answer, first, that it was not necessary; it was only necessary to state facts, and if facts be stated which by the statute authorize a lien, it is sufficient.   In all pleadings, such facts only as will give the party pleading a good cause of action, need be stated.   3 How. Rep. 82.

Secondly.  The objection is unfounded in fact, as the petition does ask that the work and property, &c. may stand bound for plaintiff's demand.

2. The second cause of demurrer is, that the plaintiffs below do not show by said petition that there were no liens on the land of defendant below at the time the contract was made.   To this objection we answer, first, the plaintiff is not bound in any case to state any more facts than are necessary to present to the court a good cause of action.   3 How. Rep. 82.

Secondly.  If there were other liens on the land, that fact could constitute no bar to plaintiff's action, for the land would still be bound after satisfying prior liens; but whether it would or not, this objection goes only to part of the plaintiff's right, for it supposes that plaintiffs would have a right of lien and recovery as to the work done and materials furnished; then the demurrer being to the whole of plaintiff's action and right of recovery, and being bad in part is bad for the whole.   1 Chit. Pl. 664, 665.   If one of several counts be bad, or a part of one count be bad, and defendant demur to the whole, the demurrer should be overruled.   *Ib.*

3. and 4. These two causes of demurrer are predicated upon the erroneous supposition that Richardson, the defendant below, was to be deprived of the right of trial by jury.   There was no cause for any such supposition.   An act of the legislature, in derogation of the common law, is strictly construed, and is carried no farther than the words of the act carry it, and the remedy is always within legislative control.

5. and 6. The fifth and sixth causes of demurrer are founded upon the supposition that the court below were exercising chancery jurisdiction; which supposition was wholly unfounded. The statute under which the proceedings is had, only changes the form of proceeding, authorising a petition instead of a declaration. This the legislature could well do. Every form of remedy is a mere question of policy over which the legislature has entire control. 4 How. Rep. 648. And the act explicitly shows, by the third and fourth sections, that the court is not intended to be made by said act a court of chancery; a judgment is to be rendered and an execution to be awarded.

If it should be objected that part of plaintiff's account was for services for which the statute does not give the remedy by petition, we answer, first, that if the objection is true in fact, it cannot be sustained in this case, because the demurrer is to the whole petition or action, and this objection only goes to part of the count. If a demurrer be to the whole count, and part only be bad, the demurrer will be overruled. 1 Chit. Pl. 665. Second, this objection is not specially demurred to, and therefore it is not well taken. Rev. Code, 119, sec. 64. But, third. That part of the items are not legal evidence under the count, is not a matter of demurrer. And 4th. The whole of the items are such for which the statute gives the remedy. The statute gives the remedy for the erection or repairing any description of mechanical work, or the furnishing labor for the same. See acts of 1840, p. 58, sec. 1.

II. The second error assigned is, that the court below erred in submitting the cause to the jury on the issue closed or joined.

It will be seen that the issue was joined upon a plea of the defendant below, denying all the allegations of the petition. Now if this plea of defendant was defective in form, it was our privilege to have demurred to it. It was substantially good; and we chose to take issue thereon; it does not lie in the defendant's mouth to say now, after verdict, that it was informal; but whether the plea or issue was good or bad in form or substance, advantage can not now be taken of it. The Statute, Revised Code, page 124, sec. 91, provides that no judgment after verdict shall be reversed for any defect in the issue or pleadings, whether of form or substance, which might have been taken advantage of by demurrer,

Richardson, Appellant, *v.* Warwick *et al.*

and which was not so taken advantage of. Revised Code, page 124.

III. The third and last error assigned is, that the verdict of the jury is void and the judgment thereon erroneous.

The verdict is, that the jury find for the plaintiffs below and assess their damages, &c., and the judgment follows the verdict, both of which we suppose is perfectly correct. A statute like the present, changing the common law mode of procedure, is to be strictly construed, and is not to be carried by construction further than the act itself carries the change. The act does not, therefore, change the proceedings any further than by directing the plaintiffs to proceed by petition, instead of a declaration. All the proceedings, then, except the petition and the form of execution as directed by the fourth section of the act, are left as they were before the act passed. The act in requiring the plaintiffs to proceed by petition, does not thereby also change the mode of proceeding in all subsequent stages of the case. What other form of verdict or judgment could have been given. The third section of the act requiring the court in the trial of the case to be governed by the same rules of evidence that are now observed in suits at law, and to render judgment, &c., shows that the court is to proceed according to the ordinary modes of procedure known to courts of law.

It can not be pretended that the court should have rendered a decree, because the act requires the court to give judgment and award execution, and because also the rules of evidence on the trial are required to be the same, as in other suits at law; whereas if the court had to proceed in form as a chancery court, the evidence would be by depositions. The act in requiring the court to give judgment according to the justice of the case, clearly means that the court should not permit any technical objections to be thrown in the way of the plaintiff's recovery.

The object of the statute clearly was, to give to mechanics a more simple and certain remedy. But we insist in behalf of the defendants in error, that whether the verdict and judgment was formal or not, it can not now be disturbed. No judgment after verdict shall be set aside for any informality in entering up the same. Revised Code, page 124–125, sec. 91.

It is not believed that there is any defect in either the verdict or

judgment; but if there were, it is cured by the above statute, as well as by the particular act under which the suit is brought, which requires the court to disregard technical forms, and give judgment according to the justice of the case.

Mr. Justice CLAYTON delivered the opinion of the court.

This was a petition filed by the appellees, under the act of 1840, to enforce their lien for work done as mechanics, upon a gin house and tract of land of the appellant.

It is objected on the part of the appellant, that if the right of the petitioners under this act to enforce their lien is purely legal, and the mode of proceeding prescribed is at law, then the statute is unconstitutional, because by inference and implication it takes away the trial by jury. If the mode of proceeding is an equitable one, that then the judgment must be reversed, because the mode pursued is against the established forms of equity pleading.

An attentive consideration of the statute leads us to the conclusion, that where the contract has not been recorded, the remedy is intended to be at law. The petition is directed to be docketted on the common law appearance docket, and the court is directed to be governed by the same rules of evidence that are observed in suits at law, and to give judgment according to the justice of the case. These last words were probably meant to exempt the courts from the necessity of adhering to the strict rules of pleading, and the whole language distinctly stamps upon the proceeding the character of a remedy at law. It does not appear that it was intended to take away the trial by jury; indeed the fair inference is the reverse, and that no farther change was meant to be introduced than to substitute for the ordinary declaration a petition in which the nature of the lien claimed should be set out. The execution to be issued is an execution at law in the common form, except that it describes the property to be sold; in this respect resembling an order of sale of attached effects, or a *venditioni exponas.* The statutes upon the subject of the liens of mechanics passed before the act of 1840, under which this case arose, have been considered and enforced by this court, without objection to their constitutional validity. See 2 Howard, 874. In several other states similar laws exist, and in none, so far as we know, have they been held

to be unconstitutional. See 12 Wendell, 373; 8 Yerger, 168. The remedy prescribed in this state is not in form identical with that in the other states ; but the variance is not so great as to require us to declare the act to be unconstitutional. There is a very strong and striking resemblance between this statute and one in Tennessee in regard to the lien of a landlord upon the crop grown on the premises, so far as the mode of enforcing the lien is concerned. There it has been held, that the landlord, to enforce his lien, must bring suit and recover judgment for the rent, and then the lien of his judgment and execution take date from the day the rent falls due. Hardeman *v.* Thumate, Meigs 398 ; 6 Yerger, 267. So here, when the judgment is obtained and the special execution issued, the lien attaches to the property described in the petition from the date of the agreement or time of performing the labor, and is enforced from that period by the relation of the execution.

The objection seems to be, not that the jurisdiction is given to the circuit court in the exercise of chancery powers, as it is conceded might be done, to foreclose a mortgage, or enforce a lien ; but that it is given to that tribunal to enable it as a court of law to exercise a jurisdiction which belongs only to a court of equity. The right to enforce a lien may often be more appropriately exercised by a court of chancery ; but it does not belong exclusively to that tribunal. Every judgment at law constitutes a lien, and in giving effect to it, it sometimes becomes necessary to call in the aid of a court of equity ; but more frequently it is rendered effectual by the inherent powers of a court of law. This act merely by relation gives an antecedent effect to a judgment by coupling it with a prior lien. Had we framed the law we might not have selected that mode of remedy, but we see no such repugnance to the constitution in it, as calls upon us to pronounce it void.

The other objections to the proceeding are of a minor character. It is said that the verdict should find not only the indebtedness, but its character ; that is, whether it was the kind of debt mentioned in the statute.

The verdict in this case is in general terms, " we of the jury find for the plaintiffs," and the only construction to be placed upon this is, that under the issue of non-assumpsit, they had found the allegations of the petition to have been established by the evidence

Richardson, Appellant, *v.* Warwick *et al.*

in favor of the plaintiffs. If they were not justified in the finding, and if the court erred in giving the judgment, the defendant should have put something upon the record by which the error might be perceived.

Another objection is, that a part of the items contained in the account on which the verdict is founded, are not of the character contemplated by the statute. This may be true, but they went to the jury without objection, so far as the record shows; and there is nothing reserved in a bill of exceptions or otherwise upon which to reverse.

The last objection to be noticed is as to the form of the execution. It is insisted that upon this judgment a general execution may issue, without regard to the special form prescribed by the statute, and thus a general lien upon all the defendant's property be created, instead of the particular property mentioned in the petition. The provisions of this statute of 1840, were introduced especially for mechanics, and they may preserve their lien by pursuing the statute; yet as it is a benefit provided for them, they may abandon it at their pleasure, either before or after judgment. If they elect not to issue the special execution under the statute, it would amount to an abandonment of the special lien, and they would then occupy the same position with other judgment creditors.

The judgment will be affirmed.