THE HUBBELL, HALL AND RANDALL COMPANY *vs.* GEORGE F. PENTECOST ET ALS.

Third Judicial District, New Haven, January Term, 1915.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

An election by the owner of a building, abandoned by the contractor, to finish the work himself pursuant to the terms of the contract, is an acceptance of the contractor's part performance and a waiver of the owner's right to terminate the contract relation, and in that event the liens of the subcontractors may attach to any balance due to the general contractor; but in determining whether there is any balance, moneys expended by the owner in completing the building must be deducted from the contract price.

General Statutes, § 4138, provides that in fixing the amount to which subcontractors' liens attach, the owner shall be allowed payments made in good faith to the general contractor before receiving notice of such liens, but that no payments made "in advance of the time stipulated in the original contract" shall be considered as made in good faith, unless notice of intention to make such payments shall have been given in writing to each person "known to have furnished materials or rendered services" at least five days before such payment is made. *Held:*—

1. That payments made as the building reached its prescribed stages of completion, were not made "in advance of the time stipulated," merely because the architect had not then issued his certificate that they were due, since the object of the statute was to afford a means of notice to subcontractors as to when payments might be expected, of which they were sufficiently advised by the contract itself and the progress made upon the building; and that an architect's

certificate was necessary only when its issue, and not the stage of the work, fixed the time of payment.

2. That in order to preclude the owner from the benefit of payments made in advance of the time stipulated in the contract, it was necessary for those claiming liens to show that he had definite knowledge of their names and relation to the work sufficient to have given them the written notice contemplated by the statute; and that proof that he merely knew, in a general way, that the contractor was not doing the work with his own hands nor with his own materials, was not enough to discharge this burden.

The owner of a building abandoned by the contractor incurs no liability for a lien simply because he does not take possession of plumbing supplies left upon the premises.

Argued January 21st—decided March 26th, 1915.

ACTION to foreclose a mechanic's lien, and for damages, brought to and tried by the Superior Court in Fairfield County, *Tuttle, J.;* facts found and judgment rendered in favor of the defendants George F. and Ada R. Pentecost and Frederica P. Philips, from which the other defendants, except the Tokoneke Corporation, and the plaintiff appealed. *No error.*

*George H. Vosburgh,* with whom was *Charles D. Burnes,* for the appellant (plaintiff).

*Warren F. Cressey,* for the appellants (defendants Lavin and Benoit).

*George E. Beers,* with whom was *William C. Rungee,* for the appellants (defendants Brush, Wellstood and the Greenwich Hardware Company).

*Stanley T. Jennings* and *John C. Chamberlain,* for the appellees (defendants George F. and Ada R. Pentecost and Frederica P. Philips).

BEACH, J. The defendant George F. Pentecost contracted with one Sage, as general contractor, for the erection of a dwelling-house on defendant's land in the

town of Darien for the agreed price of $15,337.50, payable in instalments as the building progressed, payments to be made on the certificate of the architect. The defendant had paid Sage three instalments, amounting in all to $10,500, when Sage abandoned the work, leaving the building substantially incomplete. Mr. Pentecost thereupon terminated the employment of the contractor, pursuant to a provision of the contract authorizing him to do so, and to finish the house himself at his own expense, and to charge the cost of completing it according to the contract, against the contractor. The result was that it cost the owner more to finish the house than the agreed contract price, and as there is no balance due the contractor, under ordinary circumstances there would be nothing to which the liens of subcontractors could attach.

But the plaintiff and the other subcontractors, none of whom filed due notice of intention to claim liens until after the contractor abandoned the work, claim that some of the payments made by the owner to the general contractor were prematurely made without notice, and that the defendant is not entitled to be credited with such payments in ascertaining whether there is any balance to which their liens can attach.

Section 4138 of the General Statutes provides that liens of subcontractors shall not attach to any building or land to a greater amount than the cost of the building as agreed between the owner and the general contractor; that in determining the amount to which such liens may attach, the owner shall be allowed whatever payments he shall have made in good faith to the general contractor before receiving notice of such liens, and that "no payments made in advance of the time stipulated in the original contract shall be considered as made in good faith, unless notice of intention to make

such payment shall have been given in writing to each person known to have furnished materials or rendered services at least five days before such payment is made."

There is no claim that any notice was given to anybody before the payments in question were made, and it is conceded that some of the payments to Sage were prematurely made. The case turns on the effect of Sage's abandonment of the work before it was substantially completed, on the amount which is to be allowed the defendant Pentecost as payments made in good faith, and on the question whether there were parties "known to have furnished materials or rendered services" at the times when any advance payments without notice were made.

In *Ennis* v. *Parkhurst*, 87 Conn. 686, 89 Atl. 346, we held that when the owner exercised an option, given to him by the contract in case of the contractor's default, to complete the building at his own expense, and charge the cost thereof to the contractor in reduction of the contract price, such an election amounted to an acceptance of the work already done as a part performance of the contract, and to a waiver of the right to treat the contract relation as terminated by the contractor's default, and entitled subcontractors who had given due notice of intention to claim a lien, to the benefit of any balance due to the contractor by the terms of the contract. That case determines the right of these subcontractors to enforce their liens to the extent permitted by the statute.

Coming now to the question what amounts are to be allowed the defendant Pentecost as payments made in good faith under the contract, we think he is entitled to the first instalment of $3,000, payable when the frame was up and the building was sheathed. This instalment was paid to the contractor in two payments of $1,500 each, and both payments were made

after the building had reached the stage at which they were payable, but the first $1,500 was paid before the architect had given any certificate that it was due, and the claim is that it was for that reason made "in advance of the time stipulated in the original contract."

We think not. The manifest object of this provision of the statute is that unpaid subcontractors may have actual notice from the face of the contract of the times when payments may be expected to be made to the general contractor. When, as in this case, the instalments are made payable as the building progresses, the subcontractors are sufficiently advised by the progress of the work as to the time when the next instalment will become payable, and may act accordingly. But the additional provision for an architect's certificate adds nothing to their information in such a case, and they are not bound by it; for if the architect gives his certificate before the time stipulated for in the contract, the subcontractors are not bound by the payment. *Marshall* v. *Vallejo Commercial Bank*, 163 Cal. 469, 126 Pac. 146.

On the other hand, if the payment is made at the time stipulated in the contract, the owner is protected, though no certificate was given. *Valley Lumber Co.* v. *Struck*, 146 Cal. 266, 270, 80 Pac. 405. Of course, if the contract contains no other stipulation as to the time when the payment shall be made, except that it shall be made upon the certificate of the architect, the certificate is necessary. *Daley* v. *Somers Lumber Co.*, 70 N. J. Eq. 343, 61 Atl. 730.

Other payments to the contractor, amounting in all to $7,500, were admittedly paid in advance of the time stipulated in the contract, but the whole amount of these advance payments is in no event available to the subcontractors, for we think it is clear that the payments made by the defendant Pentecost in completing

the house after the contractor abandoned the work, are payments made in good faith and at the time stipulated in the original contract. The trial court has found that these payments, which were chargeable to the contractor under the contract, amounted to $8,039, and to that extent any possible rights of the general contractor were diminished. In this State subcontractors stand no better than the general contractor as regards the validity and amount of their liens, and the effect of § 4138 is simply that the subcontractors are entitled to treat payments not within the statutory definition of good faith as if they had not been made at all. Treating these advance payments of $7,500 as if they had never been made, the balance of the contract price due the general contractor, after deducting the amount of the first instalment and the cost of completing the house according to contract, would be only $4,298.50. The liens of the subcontractors cannot extend beyond this balance. *Waterbury Lumber & Coal Co.* v. *Coogan,* 73 Conn. 519, 48 Atl. 204; *Tice* v. *Moore,* 82 Conn. 244, 73 Atl. 133; *Ennis* v. *Parkhurst,* 87 Conn. 686, 89 Atl. 346.

The question whether the defendant Pentecost is entitled to be allowed any subsequent advance payments in further reduction of the amount to which the subcontractors' liens may attach under the statute, depends upon whether, at the times when such payments were made, he had knowledge, within the meaning of the statute, of persons who had rendered services or furnished materials in the construction of the building.

The trial court has found that on July 21st, 1909, when the second instalment of $3,000 was paid in advance of the time stipulated in the contract, the defendant Pentecost did not know that any of the lienors had furnished materials or rendered services in the construction of the building, and did not know of any

other person to whom he could give notice that he intended to make such payment. It is found that Pentecost then had general knowledge that labor and materials were being furnished, but this we think is not enough. Everybody who contracts for a building must know in a general way that the contractor is not doing the work with his own hands, nor, as a rule, with his own stock of materials. The statute, however, contemplates a degree of knowledge sufficient to give written notice to each person who has furnished materials or rendered services, and that must involve a knowledge of the names of such persons and of their relation to the work. The plain implication of the statute is that only persons so known are entitled to notice. The defendant Pentecost is entitled to be allowed the second instalment of $3,000, paid July 21st, 1909.

The third instalment of $3,000 was paid on August 13th and 18th, 1909, and the finding of the trial court is in substance that with one exception it was not proven, or did not appear, that the defendant Pentecost had knowledge by name of any person who had rendered services or furnished materials in the construction of the building until after these payments had been made.

We think the burden of proof is on the plaintiff and the other lienors, who claim that the payment was not made in good faith, to bring home to the defendant the fact of knowledge at the time of the payment; and on these findings they have failed to sustain that burden so far as the third instalment is concerned, except with reference to the stone mason, Frangelli. The finding as to Frangelli is that before the last payment on the third instalment was paid the defendant had knowledge that he "had at some time worked upon the house." At what stage of the building does not appear, nor is it

found whether or not he had already been paid when the third instalment was paid. We do not think that on this finding the plaintiff has sustained the burden of proof. The statute is for the benefit of persons having an inchoate right of lien, and while its language calls for notice to each person known to have rendered services, it is obvious that the giving of notices to persons who had already been paid in full would benefit no one, and that to treat the failure to notify such persons as evidence of bad faith, would be overworking the letter of the statute at the expense of its spirit.

There is a finding that the defendant knew Mr. Randall, the representative on the work of the plaintiff corporation, and knew that the lumber was being furnished by some concern represented by him, but had no definite knowledge that the plaintiff corporation was furnishing the lumber until after the third instalment was paid.

Here again the plaintiff fails to make out a case entitling it to notice. Mr. Randall was not furnishing the lumber, and the plaintiff was not known to have furnished it.

The claim that the defendant Pentecost is liable in some amount because he failed to take possession, as authorized by the contract, of certain plumbers' supplies left on the premises when the general contractor abandoned the work, is overruled. The liability of the owner to respond to these liens is purely statutory.

As the payment of this third instalment would exhaust any balance which would have been due to the general contractor in case the advance payments objected to had never been paid at all, it is unnecessary to consider the other questions discussed on the briefs.

There is no error.

In this opinion the other judges concurred.